Case number 13-2250, Jane Blumenthal v. Eileen Brewer So if the attorneys would step up and identify yourselves for the record Shannon Mincher appearing on behalf of appellant Eileen Brewer Rupert Burnick, your honor, is appearing on behalf of Jane Blumenthal Alright, Mr. Mincher and Mr. Burnick, each of you will have approximately 15 minutes to present your oral arguments And from that, Mr. Mincher, you may save out some time for rebuttal Alright, so with that, please step up and you may proceed Thank you so much, I would like to reserve three minutes for rebuttal May it please the court, this case arose out of the dissolution of a 26 year relationship between the parties that included the raising of three children The circuit court, based on the 1979 decision in Hewitt, felt that it was compelled to dismiss the counterclaims that Ms. Brewer brought in response to the partition action filed with regard to the jointly owned family home by Dr. Blumenthal Those counterclaims addressed all of the jointly acquired property that the parties had accumulated during their relationship And primarily sought to prevent the unjust enrichment that would occur if the parties were simply left as they were when the relationship ended In light of Ms. Brewer's investment of her own funds, including inheritance in Dr. Blumenthal's medical practice And in light of their shared understanding that Dr. Blumenthal would be the primary breadwinner and that Ms. Brewer would subordinate her career and earning to be able to take primary responsibility for caring for the children and the home So the primary issue before this court is whether, as Ms. Brewer argues, the rule in Hewitt has been implicitly overruled by subsequent legislation and case law And if the court agrees, then it need not reach any constitutional issues If the court does conclude, though, that Hewitt is still binding, then those constitutional issues have been presented to the court and would need to be reached With the court's permission, I'd like to turn first to our argument that Hewitt has been implicitly overruled by subsequent legislation in case law And so Hewitt announced a new rule, a pretty categorical sweeping rule that excluded unmarried partners from being able to bring any of the common law or equitable claims that any other two litigants could bring in a property dispute And the court, in reaching the conclusion that was required by Illinois policy at the time, relied on several policies that the court expressly discussed The so-called rule of illegality, preventing enforcement of contracts that rest on underlying unlawful behavior And I can't stress enough the importance of the fact that at that time, cohabitation, living together outside of marriage, was a criminal offense in Illinois Counsel, I have a question. Hewitt, isn't it factually distinguishable from this case in the sense that there wasn't explicit misrepresentation or alleged fraud with regards to the agreement between the parties? We're not alleging any wrongdoing or misconduct, which is not a requirement or an element of unjust enrichment I mean, these parties expected that they would stay together on a permanent basis. Unfortunately, that didn't happen But that is how they had planned and arranged their lives and made decisions, shared joint decisions, based on that That resulted in Ms. Burr suffering very significant financial disadvantage based on sacrifices she made for the overall well-being of that family unit And our basic position of the counterclaim to the premise is that, just as in any other similar situation, whether it was unmarried partners or any other two people It would be unjust to allow one partner, in this case Dr. Blumenthal, to walk away with sole ownership of those jointly acquired assets Well, on this idea about implicitly being overruled, the case, do we, as a reviewing court, we certainly don't have the authority to say that We don't have the authority to overrule a Supreme Court case. So how do we have the authority to say that it's been implicitly overruled? Absolutely not. To be clear, we are not asking this court, it wouldn't be proper to ask this court to find that Hewitt was wrongly decided or to overrule it But it is really well established under Illinois law, as well as in many other states too, that courts at any level can and actually have a responsibility To recognize when what would otherwise be a binding precedent has been implicitly overruled by either subsequent legislation or subsequent case law That conflicts with the reasoning and results in the precedent issue. In this case, Hewitt. We have both here Now, wouldn't it be a better idea to say that public policy has changed instead of saying that something should be overruled? Well, yes. I mean, I think they both work together. I would absolutely agree with you that the public policies underlying the Hewitt decision have been entirely eliminated Well, what cases would you rely on for the idea that an intermediate court of appellate review can state that the public policy of the state is now something else? Is that really within our powers or is that something that perhaps best belongs to the Supreme Court? It actually is within your power. People v. Fox would be an example where the appellate court recognized that what would otherwise have been a binding Illinois Supreme Court decision Had been implicitly overruled by a subsequent Illinois Supreme Court decision, even though the subsequent decision did not expressly overrule the prior one People v. Askew, which this court decided in 1995. Leishon v. The Oat Controls, which this court decided just in 2010. I mean, this is a well-established aspect of Illinois law that the appellate court can and actually does have a responsibility to When the issue has been presented, it has been here to determine whether a precedent has been implicitly overruled by subsequent case law and legislation On your unjust enrichment count, you're not relying on any fraud or duress or impropriety. What you're basically relying on, and you can correct me if I'm wrong, is that there is an implied contract here That should be enforced, regardless of whether the parties are married. We're not relying on, we're not alleging fraud or misconduct. And under HPI health services, health care services, that's not a required element of an unjust enrichment claim. That's three of the counterclaims, count one, count three, and count four, that bring, that rely on unjust enrichment theories. And I mean, the basic premise is that, well, Ms. Brewer is asking for a constructive trust on whatever portion of the Kimbark home is allotted to Dr. Blumenthal in the partition action Based on the parties' shared understanding and agreement that Ms. Brewer would make financial sacrifices for the greater good of the family unit. That ended up greatly enhancing Dr. Blumenthal's wealth and assets. And the basic premise of unjust enrichment is that it would be unfair and unjust for one party in that situation to walk away with sole ownership of those jointly acquired assets. Are you contesting the dismissal of each and every count, for example, Quantum Merowit? Wouldn't this case be, I mean, is there a case that you could really cite that supports that count, Quantum Merowit? I mean, I understand your unjust enrichment allegations, but what case would you cite that would support Quantum Merowit, regardless of Hewitt versus Hewitt? Well, you know, the Quantum Merowit claim is pretty straightforward. I mean, she meets all the elements of a Quantum Merowit claim. Well, it's not actually a claim, isn't it? Isn't it more an equitable remedy that the court can grant? Yeah, it's an equitable remedy. I mean, all you have to show is that you performed services that benefited the defendant, that those were not gratuitous, and that there was no contract. So here we're only talking about the Quantum Merowit claim. So there was no contract. So the Quantum Merowit is based on this equitable notion. It's not really based on a contract, in fact, or one that's implied under the law, is it? That's correct, and we're only talking about the period of time after Dr. Blumenthal left the family home. We're talking about the services that Ms. Brewer performed to maintain the home in that interval. So the Quantum Merowit claim is actually quite limited in scope. Your opponent also says that at the end of the day, you don't even have factual allegations to support any of the counts, that some of these counts are based on information and belief. But, you know, he argues that you haven't fled specific facts to establish any of the counts. Well, I would direct the court to pages 183 to 190 in the record, where I think all of the necessary factual allegations are set forth in the complaint, setting forth the counterclaims. But also, you know, we're up on the appeal of a motion to dismiss, and the circuit court relied exclusively on Hewitt. Now, Dr. Blumenthal challenged the validity and the factual sufficiency of some of these claims below, but the circuit court did not reach those issues at all. And under the Gagnon case that Dr. Blumenthal actually cites, I think it's very clear that when a circuit court dismisses claims based on one ground and does not address other possible factual or legal issues, then the appropriate remedy is to remand to give the circuit court an opportunity to address those in the first instance. But the issue that's in front of this court on appeal is the circuit court's reliance on Hewitt to dismiss all of the counterclaims. So that's what's before the court on this appeal. Well, going back to Hewitt, now, you've indicated numerous ways that the public policy of the state has changed. But if you were asking us to write this in terms of the change in the third restatement, restitution, what would you do with the Hewitt case? The Hewitt case basically says that unmarried parties don't have the right to sue for breaches of what would be an otherwise implied contract. And it specifically is bottomed on this idea that it would be reinventing or resurrecting the law against common law marriages. But the American Law Institute's restatement of restitution specifically provides for the kind of relief being sought in this case. So how would you suggest that we address Hewitt in light of the third restatement, which Illinois hasn't adapted specifically? Right, right. Yeah, I mean, I think it's significant that Hewitt relied on Corbin on contracts in the restatement, and that both of those scholarly treatises have now completely reversed course and recognized that claims, contractual and equitable claims between unmarried partners should be enforced the same way as contractual and equitable claims between any other two parties. I mean, what's at issue here is not the invention of new claims, but the removal of the prohibition that Hewitt imposed the categorical exclusion of one group of litigants and said that you all cannot bring claims that would be available to cousins, siblings, family members, acquaintances, business associates. So there's no need to invent or impose some new framework. We're not talking about new causes of action. We're not talking about any sort of special claims that would arise uniquely by virtue of being in an unmarried partnership. We're just talking about allowing unmarried partners to have the same range of common law and equitable options that are available to any other two litigants. And I think that is also what the third restatement contemplates. That's what the current version of Corbin contemplates. Well, in terms of all the public policy changes that you've pointed out, has there been any change in the legislative policy behind the ban on what has been termed a common law marriage? I think it's very important to look at what Hewitt specifically said about common law marriage. It wasn't just the fact that the state doesn't recognize common law marriage. Hewitt interpreted that, imputed to the legislature an intent by getting rid of common law marriage to at the same time disfavor any other type of family relationship and to withhold any type of legal protection or recognition of other family relationships. We now know that is, we're certain that that is not in fact the intent of the current Illinois legislature, because that legislature has extended all kinds of rights and benefits to unmarried partners, including them in the Domestic Violence Statute Act. The state has extended domestic partner benefits to state employees. Does Hewitt even apply here today in light of the fact that Hewitt enunciated the law as it related to marriage, as it was previously defined? In other words, at the time of Hewitt, the only type of marriage recognized in the state of Illinois was a marriage between opposite-sex partners, whereas today the state recognizes and has made it into our law that same-sex partners may marry. Whereas at the time that Hewitt was decided, the identification or the notion of what a marriage was, doesn't have anything to do with what the current state of the law is in Illinois. I think the change in Illinois law to permit same-sex couples to marry is hugely significant, and it's one of many changes showing that the legislature has now, and the courts as well, have embraced a much wider range of family relationships and no longer identify marriage, specifically marriage between a man and a woman. Well, maybe that's a question that I should ask to your opponent. But how does Hewitt apply in this instance when it was deciding an issue that related to a definition of marriage that is not the current definition of what marriage is in Illinois? I think that's a very good question. I'll be interested in hearing... Yes, but what is your response? No, I am agreeing with you. Yes, absolutely agree with you, Your Honor. Whether we're allowed or whether we can implicitly overrule or say, rather, say that something has been implicitly overruled, and again, I'll say, perhaps I'll address this question to you. How is Hewitt applicable under the facts of this case when it was actually decided at a time when the concept of marriage was not the same as what it is now as recognized by our legislature? I think there's a very strong argument that there's no logical or rational application of Hewitt to these facts. I mean, clearly the court in Hewitt did not contemplate anything like the factual situation in front of it. And I guess I would just add to that, it's not just that change. We're living in literally a different family law world in terms of Illinois law today than at the time Hewitt was decided. And I can't stress enough the significance of the fact that Hewitt relied on the fact that the underlying conduct of the issue was a criminal offense. I mean, that has not been true since 1990. And the U.S. Supreme Court has now, in fact, held that individuals have a constitutionally protected right to enter into an unmarried partnership. There's no more no-fault divorce. And again, I think it's important to look at the significance that Hewitt gave to that fact or Hewitt was concerned. The Hewitt court assumed that by not embracing no-fault divorce, the legislature wanted to have a very bright line distinction between marriage as a status and private contractual relationships between adults. But the state has now embraced no-fault divorce and has now embraced an understanding of marriage as a mutual agreement that is more like a private contractual relationship that's terminable at will. I mean, the legislature itself has now blurred that line between married and unmarried couples. The Hewitt court also relied on policies disfavoring unmarried parents and children. Those have been completely repudiated. Both the legislature and the courts now mandate equal treatment of marital and non-marital children in terms of adoption and custody, parentage law. Literally not a single one, not a single one of the legislative or judicial policies that Hewitt relied on has any footing today in Illinois law. And it's not just that those policies have been eliminated. They've actually been replaced with countervailing policies. They're not so much replaced as repudiated, I would say. I agree with you, Your Honor. Counsel, I have another question. With regards to the trial court's reliance on Hewitt, putting that aside, trial court also indicated that the counterclaims were not properly pled with regards to what was alleged in the counterclaims. So what is the benefit here that was unjustly retained? Well, Your Honor, I don't think that's right. The circuit court did not find or hold in any way, shape, or form the counterclaims were not properly pled. The sole order that is on appeal is the dismissal of the counterclaims based exclusively on Hewitt. But part of the argument here is the elements with regards to the unjust enrichment, correct? Dr. Blumenthal's counsel has on appeal, I think, improperly suggested this court should look at the validity of the claims. I mean, we have responded to that. I think that if you look at the, again, pages 183 to 90 in the record, all of the necessary factual allegations to support every single one of these counterclaims is right there in the complaint that was filed by Ms. Brewer below. And I think in terms of the elements of unjust enrichment, we have those allegations. So what is the benefit that was unjustly retained? Well, there's multiple benefits, including Ms. Brewer's investment of her own money, including an inheritance in Dr. Blumenthal's medical practice. Well, on that issue, isn't it pretty clear that under this Illinois Medical Practices Act that the only individuals or corporations that can invest in a medical practice are licensed medical physicians or clinicians? Of course, yes. But she's not seeking an ownership interest in the business. That's why the remedy is sought is constructive trust. No, but isn't it avoidance against public policy to permit anyone to seek funds from a corporation, medical corporation, when they're not having the act in front of them? But I do believe that that's certainly a valid argument to be made. How would you respond to that? I don't think there is any public policy issue there. Because the remedy sought is constructive trust or in the alternative restitution, if there were any issues with that, Dr. Blumenthal could simply repay the monies invested. But I think it's common to bring up unjust enrichment claims in similar circumstances. Well, I don't know about that. Is there anything you wish to add at this time? Do the other justices have any further questions? I just have one other question. This type of case I think is going to have a lot of impact on cases in the future. Because really what we're doing here, what you're asking us to do is to treat these two people as if they were married by using other vehicles to do so. And that's going to be a consideration that may change the jurisprudence of the state, maybe even of this nation. Well, Your Honor, I wouldn't agree with that characterization. If these parties were married, there would be no need for Ms. Brewer to bring any of these equitable claims. She would have an automatic right as a spouse to an equitable division of property. But the bottom line would be to treat it as if they were married. I mean, that's basically what the bottom line comes out to be? I don't think so. I mean, the fact that applying these equitable claims may result in some cases with property divisions that resemble some of the divisions that would take place in a marriage does not mean that the law would be treating an unmarried partner the same way as a spouse. A spouse doesn't have to meet the elements of unjust enrichment or all of these other claims. All that Ms. Brewer is seeking and other similarly situated cohabitants are the ability to bring exactly the same ordinary contract and equitable claims that would be available to any other two parties, if these were friends, family members, or associates. We're asking for the removal of the disability that he would impose based on policies that no longer exist in Illinois law that categorically exclude just that one group of people from the ability to bring those claims. So we're really looking not at a different treatment of unmarried and married couples, but we're at a different, the Hewitt rule singles out a subset of unmarried people, the ones who are cohabiting and living together in a family unit, and it only excludes them from the ability to bring these claims that are available to everyone else. I'll reserve the rest of my time. Thank you so much. Mr. Burnick. May it please the court. Good morning. I represent Dr. Jane Blumenthal. I think it is obvious from the drafting of the counterclaim in this case and indeed from the argument in this appeal that the counterclaim was conceived with the idea of asking the court to reexamine the Hewitt decision. I am here to say that this is not the right case for the court to reexamine Hewitt, and this court is not the right court to do so. And why is that? Okay, that's what I'm going to get to. The reason is that the court should not examine whether unjust enrichment is a proper remedy in this case, because there is no valid claim of unjust enrichment here. Unjust enrichment requires that somebody be unjustly enriched, and Dr. Blumenthal has not been unjustly enriched, and also requires that the counterclaimant, Judge Brewer, suffer some sort of punishment. Now, in a partition action, one party is seeking the court to equitably divide a piece of property that two individuals have shared jointly. Correct. I mean, that's probably a real property. Yes, real property. And in this case, wouldn't it be accurate to say that the court is seeking to counterclaim and argue before the court that because since 2008, the parties who jointly owned the property have since separated, one is no longer living there, but the other has made contributions to the upkeep of that property to her detriment, or in light of the expended sums that the other party has not expended to preserve the property. Now, wouldn't that person have the right in that partition action in any event to request from the court that the court take into account those facts in awarding partition? Absolutely. That is part of the action of partition. That is not a separate action for unjust enrichment. Why not? Because that's part of the accounting that goes into deciding who has what. That's in fact what the court has done in this case. I think that the court here ought to know that Judge Martin has tried the underlying partition action and has rendered a decision dividing the property between the parties, and indeed, he took into account precisely what your court... Well, when was all this done? We tried the case about a month and a half ago, and he issued his decision, I think it was last week, and he issued his decision, and he issued his decision to decide that when this appeal was pending. When the appeal was taken, there was no stay, the action went forward. There's an automatic stay when an appeal is filed. I don't know that the trial court... Well, you know, this isn't something that we were made aware of, but you're saying since there was no stay that the partition action proceeded. I'm saying the partition action proceeded, and both parties participated and went forward. That's what I'm telling you, and that's what happened. I was there, and Ms. Keene was there. We tried the case. Okay, so in that case, the court decided the partition action even though the dismissal of the counterclaim was on appeal in this court. That's correct. And so what happened in that partition? Judge Martin made a decision. He came out with a percentage. Well, he came out with numbers, but the percentage works out to Judge Brewer got 54%, and Dr. Blumenthal got 46%. After taking into account the matters you've just suggested. So actually, if that's actually the case, which I have no reason to doubt, how is this not mooted then? I think that... At least as to the partition action. I think that four out of five counts of this counterclaim are related to the property on Kimbark. One, two, four, and five. All were tried in the Circuit Court of Cook County. Three wasn't tried? What do you mean? Three is not moved because it relates to the medical claims, and there was no ruling about that. One, two, four, and five are all related to the property on Kimbark? That's exactly right. They're all related to the property on Kimbark. But three is not. Three was not part of the partition. Three is an independent effort by Judge Brewer to essentially get a part of, or at least recover money for, Dr. Blumenthal's owning a medical practice. And I'd like to address that because I think that the issue here is central to the issue of unjust enrichment. At least in the Hewitt case, Victoria Hewitt was able to say that she devoted her entire life to the practice, to her partner, and then to building up his whatever kind of practice it was. I think it was a pediatrician. I don't think that claim can fairly be made in this case. Judge Brewer is a judge of the Circuit Court of Cook County. Judge Brewer has not sacrificed her entire life. In fact, she has achieved a level of success that lawyers envy. Does the pleading indicate that Judge Brewer contributed to money to invest in the medical practice or the development of Dr. Blumenthal's medical practice? Let me read you, if I may, the one paragraph from the counterclaim which deals expressly with this. It says, in or about the year 2000 and subsequent years, Blumenthal in information and belief, this is paragraph 33, I think it's on page 191 of the record. It says, in or about the year 2000 and subsequent years, Blumenthal in information and belief used funds in the party's joint account into which Brewer had deposited earnings and an inheritance to purchase Blumenthal's ownership interest in her medical practice. It does not say there was an investment. It does not indicate any specific funds. It does not indicate a specific sum. It says the funds were commingled in the interest. Doesn't it say, though, Ms. Burnick, in the next paragraph, Brewer allowed Blumenthal to use commingled funds for this investment with the reasonable understanding and expectation that she, Brewer, would continue to benefit from the earnings from Blumenthal's medical practice, GSN. Does. And that when Blumenthal terminated the domestic partnership, these financial benefits ceased and Blumenthal retained the entire interest in GSN and kept all the earnings from her medical practice by retaining all the funds helped acquire Blumenthal's unjustly enriched. I don't see where the unjust enrichment is. I don't even see that there was a specific investment. I see that they paid for this like they paid for all of their other medical expenses, and to allow this kind of a claim is directly contrary to what Hewitt said. Is this a defect of factual pleading or is this something else that you're alluding to? I will say this. The parties know perfectly well what assets they had and what liabilities they had and where their money went. They have been through litigation ever since 2009. There was a prior case, a support case, that I also tried where Judge Brewer was seeking support. I've permitted you to give us a little bit of information regarding the suit that is actually pending before us, but I don't know that it's appropriate or fair to now begin to discuss facts from another action that we don't have any knowledge of and that's why I'm here. I'm only referring to an opinion of this court because there was an appeal taken in that proceeding, too, and this issue was discussed in that opinion. So that's an opinion of this court. It's an opinion or a Rule 23? It's a Rule 23. Oh, right. And what is the site of that? Do you have any objection, Counsel? Mr. Minter? To him citing it? I mean, obviously we can take notice of any of our previous orders, but as long as... Well, don't judge the court taking judicial notice of matters that can't be judicially noticed, but we certainly do object to trying to use facts from another hearing to break the barrier on this appeal. All right. Well, in any event... It's 2013. It'll have, I have, it'll have first one, two, two, one, four, two, three, four, two, which is the number of the case. Mr. Bernick, do you agree that the third restatement of restitution would allow this type of action? It might. I mean, here's what it says. If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the relationship, then it would be in the form of property or services. The person making such contribution has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship. That's what that says, but I don't think that this is the kind of asset they're talking about because, in fact, the cases that we've cited specifically say that if the parties have a business type of relationship where one party, say, pays off the other's mortgage or buys cars for them, that's a different issue. Well, let's take this out of the idea of a medical practice, and let's just take, for example, some other type of investment where the parties jointly contributed funds for an investment, and at some point, those parties, and we'll assume they had a relationship. Resembling marriage, we'll assume it. And if one of them had contributed and then the relationship ended, doesn't the restatement permit the party who had provided some form of investment into that business venture the right to file an action to recoup those monies or whatever investment because at the time that the investment was made, it was understood that both parties would benefit from that investment. I think both parties have benefited from this investment. I think what's happening is that Judge Brewer has attempted to continue to benefit from this so-called investment, which I really don't think was an investment, in a fashion that really the only way it can be done under Illinois law, which is obviously what we're operating under, is by in a divorce action having that classified as a marital asset. That's the only way under Illinois law that can be done. The state that says what it says, has general language that suggests that. Do you disagree that, do you think the public policy of this state is still that a party who has never formally married should be entitled to the same kinds of relief that the Domestic Relations Act allows for, the Marriage and Dissolution Act allows? I think that the law of Illinois and the public policy of Illinois is what the legislature says it is, and what the legislature says it is, is there's no common law marriage in this state. That is not, that is a policy decision that's reserved to the legislature. We do not, the state, Illinois legislature. Don't you think the public policy of the state has clearly, or the legislature has acknowledged, that the treatment of children of unmarried persons should be equal, that they shouldn't be discriminated against? Of course. And doesn't the Illinois legislature also, with the numerous changes in the laws, don't you think the public policy of this state would also envision that non-married parties should have the same rights as married parties when the relationship has dissolved? I think that if the legislature wants to do that, the legislature can do that. I think these arguments should be directed to the legislature. I don't think this court should do it for them. That is making law that the legislature... But hasn't the legislature already done that? No, it hasn't. The ban on common law marriage is still there. The legislature has said the only way that we will recognize marriage is for you to do it ceremonially, as the state provides. You can't make a private contract terminable at will and call it marriage. But what does the Civil Union Act do? The Civil Union Act was something that allowed same-sex couples to form a marriage-like, although it wasn't called that, relationship. The legislature allowed that. Isn't that a signal, an indicator that the legislature has moved away from the policy that marriage, as it was previously defined, isn't the only relationship in which parties can rightfully petition the court for relief when there's been a dispute about the dissolution of that? I think it was a halfway measure toward allowing same-sex marriage, which now we have. So no, I don't think it's any different, because the dissolution of the Civil Union is treated just like the dissolution of a marriage. The Illinois Marriage and Dissolution of Marriage Act applies. Those remedies, which are purely statutory, not common law, are applied to that. Well, if the legislature has decided that children of non-married parties should be treated the same in the same way as married couples in the eyes of the law, doesn't that signal an indication that the public policy also recognizes that non-married couples should be treated the same as married couples? It recognizes that children should be treated the same. There's a difference between the way the legislature has treated children and the way it's treated property, which happens all over the place. But isn't it true that 47 of the 50 states, or 48, recognize that unmarried couples should have the same rights and benefits under the law as married couples? That is certainly something that the appellant has said. I haven't gone and read every single case to know whether that's true, but I don't know what difference it makes. The Illinois legislature is what runs this state, not the 47 other states. But isn't your argument pretty much based on the idea that UIT is still the law? Yes, I think it is. Now, I'm going to ask you what I asked Mr. Mentor. How does UIT really govern this case when UIT involved issues relating to marriage and as it was defined some 35 years ago, which is certainly not the way the legislature has now defined marriage? In other words, same sex couples are permitted to marry. But at the time that UIT was decided, there was no, in fact there was a law against that. So UIT involves a marriage law vis-a-vis a married couple as it was then defined. And that is not the case in which we are involved today. This is not a case that would in any way fit into the definition that the court was dealing with when it decided UIT. I think that marriage is marriage, however the legislature defines it. And I don't think that UIT attempts to define marriage except to say that the legislature has said if you want the benefits of marriage, you have to get married. But didn't UIT define it? Can we ignore the facts upon which UIT was decided? And the fact of the matter is that in UIT, the court was dealing with an unmarried couple of opposite sex. And that simply isn't the definition today in Illinois. I mean it was dealing with a factual situation that's not even remotely similar to this. So really how does this case fit into that and how are we even implicitly overruling something that actually is factually not analogous to the case before us? We have marriage and we have unmarried people leaving together now. At the time UIT was decided, one, marriage included the only people of the opposite sex. It didn't include any of that. I have now expanded it to include people of the same sex, but that still doesn't change the fact that the legislature has said we don't want judge-made marriage. We only want ceremonial marriage because the state has a legal monopoly on deciding when people are married. And if they're not married, then they're not treated as married and they don't have the rights that people have under the Illinois Marriage and Dissolution of Marriage Act. Expanding the definition of marriage doesn't change it. It lets more people into that category, but it doesn't change what happens to people who are not in that category. And that's where these people are. They're not in that category. This is the Hall case all over. The Hall case that Justice Rutkowski wrote? Is that the one you're referring to? Whatever. In re-estate of Hall it's where the ladies sought to be declared of a same-sex couple sought to be declared the surviving spouse. Right. And when was that decided? 1998. And since that time, do you at least acknowledge the changes in substantive Illinois law vis-a-vis unmarried persons or at least not unmarried persons, but there have been numerous changes. The legislature has often changed domestic relations laws. It's been doing it continuously. It's done it before that. It's done it since that, but it hasn't changed this one. It still says you've got to get married if you want to be treated as married. Did you acknowledge that in Uint the court was relying on principles that have certainly been changed now and repudiated? I just don't think that's true. I think if you read the opinion and you read the conclusion, the court says if we do what they're asking, it re-estates common law. Well, didn't they point out that Illinois still has the same laws? And that's certainly changed. There's now irreconcilable differences. That's all true. And didn't they also indicate the recognition of contracts that's also been changed? There are two things that the decision is bottomed on, both of which I think you would have to acknowledge no longer are certainly the law. You see, there's another holding to Hewitt, and that is this is the legislature's business to change this. They've been clear. We don't want judge-made marriage, common law marriage. Only the state can create the marriage relation. That is the core holding of what they say. Only the state can do it. That's what the legislature has decided. And what's being asked for here is the antithesis of that. Well, when you talk about that, there's other changes in the law, not merely this change that children, children of unmarried couples, children of unmarried couples, children of unmarried couples, should have the same treatment under the law, regardless of the parent's marriage or non-marriage, correct? Quite true. And there has been, there has also been a noticeable change in the idea that custody should not be denied because one of the parties is not married. One unmarried party has been living with another party in an unmarried state. The law has clearly changed and indicated that custody should not be denied because of the fact that one of the parties is unmarried and living with another person. So isn't that also another indication that unmarried persons should be treated the same as married persons in terms of these issues regarding when a relationship dissolves? I think that the legislature is free to expand rights if it wishes to do so, and in some areas it has wished to do so. But the facts didn't state an unjust enrichment if we took out that part of the equation that the parties were in a relationship of non-marriage. I don't know if I've made myself clear. Would you still be arguing that this didn't state a cause of action for unjust enrichment if you took out the allegations about the relationship? Well, I think that there is a cause of action for unjust enrichment. I don't think that the complaint on its face fails to state a claim for any interest in the medical practice. I think that could only be granted as part of marital property. So I guess the answer is yes. I don't think it states a claim for anything. I don't even think it really states a claim that there was an investment. But leaving that aside, it still doesn't give anybody a right to a continuing interest in somebody's earnings as is being pled here. Again, that's only a marital remedy that is not part of the general idea. Well, is this complaint really seeking a continuing request for funds or is it asking for in the alternative that those funds that were invested in the medical practice be returned? What funds? It does ask for the alternative, but what funds? Pardon me? The funds that it alleges. It doesn't even say there were funds. Well, it says that there were funds used in the party's joint account to deposit it and an interest in the medical practice. That were in the party's joint account that were used to purchase an ownership interest in a medical practice. Your Honor, suppose the positions here were reversed and Dr. Blumenthal was seeking to recover from Judge Brewer for unjust enrichment and she claimed that some of the expenses of Judge Brewer's election campaign were paid for out of the joint account. Would she then have an interest in Judge Brewer's judgeship? Would she have a right to recover money that was spent on that purpose? I can't believe it. I can't believe it and I don't think it, I can't believe it there and I can't believe it here. I just don't think there's a claim. If I can address a couple of things. Well, Mr. Burnick, would you say that many of the aspects of this suit have now become moot because the court decided counts one through four, one, two, four, and five? The court has partitioned the property. That's what started this. That's what most of this counterclaim seems to relate to. How would those counts still be alive? What relief could we possibly be granting? I think they're moot. I think the only one that's still alive is count three and I think that count three would require this court to hold that being a judge of the circuit court of Cook County is a legal injury and I don't think that's the case. I don't think most lawyers would think that. I don't think anybody would think that. I think that this is something that is essentially an attempt to create a marriage in disguise and I think that's improper. I think the legislature said it's improper and I don't know what else to tell you. As I said before, I think this case is not the right case to decide about Hewitt and I think this case is not the right case to decide about. I just have one little area that I'd like to discuss. What we're looking at here is whether the pleading state a cause of action. Isn't that what this is all about? That's correct. But we're going into philosophical things. We're going into all kinds of other things than whether it states a cause of action. Not whether it could prove a cause of action. And what I'm hearing in the brief and what I'm hearing from you in opposing counsel is all about what the proof is. Not whether it states a cause of action. Because the only thing that we have to determine is whether there is a cause of action. I agree that that is the case, but I think there's not. And I don't think the court can rule on the applicability of Hewitt if there's not a valid claim for unjust enrichment. And this doesn't state a claim. That's why I went into it. That's why I raised it below. That's why I raised it here. And one other area. Do you think we should adapt the third restatement in this case? I think if you did so, you'd have to tell the legislature you're telling them we're going to do things differently than you've said. No. I think this is an issue for the legislature. The legislature has occupied this space. Aren't there numerous decisions that either reject or accept or take on the idea that the courts can adopt provisions of the restatement? And hasn't this court and the Supreme Court done that in other decisions? Certainly. Where the legislature has not spoken, I agree. If this were a common law case, it would be different. I wouldn't be making this up. This is not a common law case. This is an interpretation of the statute of the legislature. Thank you, Mr. Burnick. Mr. Minter. Very much, Your Honor. Counts 1 and 3 are independent of the partition action. Count 1 is seeking a constructive trust after the partition action. Whatever proceeds Dr. Blumenthal gets to prevent unjust enrichment based on her retaining the full benefit. Mr. Minter, is it true? Is it accurate that the trial court has already resolved the partition action? My understanding is there's been an initial determination, not yet a final judgment. But I did want to address that. And I apologize. I meant to address that before and I forgot. I apologize for that. But yeah, below, counsel for Ms. Blumenthal, the counsel for Ms. Brewer argued to the circuit court that counts 2, 4, and 5, because they did relate to the partition, that his dismissal of those counterclaims was not final. And she filed a motion for reconsideration after he had certified pursuant to Rule 304. He made his required finding that these were final judgments and that they were appealable orders. Counsel for Ms. Brewer filed a motion for that. The dismissal did not seem to be final because they did relate directly to the partition. But the circuit court judge denied that motion. So he had no choice but to include, to preserve those counterclaims, to include them and disappeal. That said, I do think there's a question about whether they are final. And that, of course, this court has to make that determination for itself. That's a question about ambiguity. That is the situation procedurally. So that counts 2, 4, and 5 do relate directly to the partition. 1 and 3 do not. So back to the merits, just briefly, I know I've taken up a lot of your time. You know, Hewitt itself recognized that the rule it was applying was going to cause injury and hardship to individual plaintiffs. And it is, the Hewitt rule is notorious in the scholarship for doing that very thing, for causing a lot of harm and injustice. The Hewitt court felt it had to apply that rule nonetheless based on policies that no longer exist. Well, what do you say to counsel's argument that the public policy regarding the idea of common law marriages has been wrong? Regardless of all the other changes in the law, there's really never been any change by the legislature or even the courts that recognizes or allows for claims outside marriage. Yes. I mean, that's why I think it's so important to look at the significance that the Hewitt court imputed to the nonrecognition of common law marriages in Illinois. That court concluded from that that the legislature intended to, in effect, say to courts and the world that the only family relationship we value in Illinois is marriage and we actually should disfavor and penalize people who enter into any type of nonmarital family, which of course was also a criminal violation at the time. Well, has the policy really of the state changed that isn't the policy still that marriage is the, you know, the only way that marriage is still a relationship that the law respects and admires and that these disputes that arise should be resolved in light of those same principles that even though marriage now, or the concept that permits same-sex couples to marry just as it does opposite-sex couples, that the state still protects and acknowledges the idea that marriage is the, that that's the preferable or the, it's one of the fostering goals of the state to protect the sanctity still of that marriage, regardless of, you know, even though the law has changed in terms of what it recognizes marriage to be. Absolutely. Illinois law still strongly protects and encourages marriage, but... So isn't there still the same public policy that the legislature has never changed or amended the law to reflect that common law marriage is suddenly resurrected and that parties can be protected regardless of the marital or nonmarital relationship? No. What has changed dramatically is that the legislature and the courts now are in complete agreement that it is not appropriate to penalize other types of families in order to protect marital and nonmarital relationships. It's not a zero-sum game. The state now respects unmarried partnerships as well as married families. Marriages get a whole bunch of rights and protections that other people don't get, but the legislature has extended all kinds of rights and protections that we used to think of as exclusively marital to unmarried partners and now has even enacted in 2011 a civil union law that is open to both opposite-sex and same-sex couples that bestow most of the same rights and protections that go with marriage on an alternative status. So we absolutely know that the significance that the Hewitt Court imputed to the nonrecognition of common law marriage no longer reflects Illinois policy and actually contradicts it. I think it's very significant that the legislature has retained the right to marry equally to same-sex couples because it continues to value and respect those family relationships as well. How do you respond, though, and this is the last question I'm going to ask, to the case that your opponent referred to in which Justice Rutkowski wrote the opinion, the name of it escapes me now, but one of the things that was noted in that opinion was that regardless of the parties' relationship, that nothing could be done to change the fact that those parties never married. Even if at the time it was unconstitutional to prohibit those parties to be married, one of the bases of the opinion was that you couldn't really change the fact that they were never married, just like in this case, the parties never married. No, nor are they seeking to be, Ms. Brewer is not seeking to be, have this case adjudicated under the Marriage and Dissolution of Marriage Act. No, at State of Hall that litigant was seeking a statutory right to be recognized as a surviving spouse. That is not an issue here. No, but isn't it analogous in the sense that one party is seeking to have rights adjudicated as if the parties were married? No, I don't think it is analogous because that was a statutory claim that exists only for marriage. We're talking, again, about common law and equitable claims that are generally applicable, can be brought by anybody, are not uniquely tied to marriage. I understand, Judge Gordon, that the end result means that the parties are in a lot of marriages, but the route to get there is completely different. We're not asking the court to apply the Marriage and Dissolution of Marriage Act. We're asking the court to let these parties use the same equitable and common law framework that would be available to any other litigants. And just as to whether this is appropriate for the legislature or the courts to correct, this is, of course, Q, it is, of course, a matter of the common law, and the legislature has acted to change all of those policies that we've been talking about with the exception of... I still don't understand, and this isn't a question, I don't understand how the parties proceeded on the partition action knowing full well that this court had before it a dismissal of the counterclaim related to that partition action and how this full proceeding isn't mooted by the parties. The court made a decision on the partition, and the counterclaim was pending that related directly to that partition action. Did you present the arguments in this partition action? Well, again, I'm not going to ask any further questions. I have no further questions. All right. Thank you very much. All right. We appreciate the briefs and arguments that the parties have presented, and the amicus brief, the case was well-argued, well-briefed. It is certainly a case of first impression, and we will take the matter under advisement. Thank you.